Otis REYNOLDS et al. *v.* COMMODITY CREDIT
CORPORATION

89-225                                                     780 S.W.2d 15

Supreme Court of Arkansas
Opinion delivered November 20, 1989

*Boyce & Boyce*, by: *Edward Boyce*, for appellants.

*Charles A. Banks*, United States Att'y, Eastern District of Arkansas, by: *Patrick Harris*, Asst. United States Att'y, for appellee.

ROBERT H. DUDLEY, Justice. The issue in this case is whether the Chancellor erred in finding that the appellee, Commodity Credit Corporation, was a protected depositor of grain under the Arkansas Public Grain Warehouse Law and thus entitled to participate in the pro-rata disbursement of a warehouseman's bond. The Chancellor was correct in allowing the appellee's claim, and we affirm.

Arkansas State Plant Board audits of the Farmers Mill & Seed—Bulk Grain Division, a grain warehouse, revealed significant shortages in its stores of rice. The Board called the warehouseman's $75,000.00 irrevocable letter of credit, which had been posted with the Board in lieu of a surety bond, and ordered a suspension of the warehouseman's license. The Board filed this suit in chancery court pursuant to Ark. Code Ann. § 2-17-402 (1987), asking that its commissioner be appointed receiver to take custody of the grain stored, to distribute that grain and the proceeds of the letter of credit. Ultimately, the Chancellor held that appellee, CCC, was entitled to share in the proceeds of the letter of credit.

CCC is an agency of the United States Department of Agriculture. It was established for the purpose of stabilizing and supporting prices of farm commodities and facilitating orderly distribution of those commodities. One method of supporting prices of commodities is through the use of non-recourse loans to farmers. Here, a farmer borrowed money from the CCC and collateralized the loan with rice. Under the agreement between the farmer and the CCC, the farmer forfeited the rice to the CCC to satisfy the loan, and the CCC took title to the grain. The rice was stored with the warehouseman, who gave the CCC a warehouse receipt.

The CCC subsequently entered into a contract to sell the rice to the warehouseman. The consideration was $241,126.20 for

22,964.40 cwt. of rice. Full payment was to be made to CCC within 10 days after the date of the sale. A leased wire, containing part of the terms of the contract, provided that "CCC will issue loading orders and transfer title will be made at the time of receipt of payment." The warehouseman paid $75,000.00 of the $241,126.20 purchase price. CCC sent a second leased wire, which provided:

> On March 29, 1988, CCC received a partial payment in the amount of $75,000.00 for the rice. This is to inform you that your loading order releasing any of the rice will not be mailed until payment in full (including interest payments) is received. Our office has made numerous attempts by phone to contact you to resolve this matter. Please contact . . . to inform us of your intentions on completing payment and taking title of this rice.

The warehouseman had not paid the remainder of the purchase price when the shortage in stored rice was discovered, and the letter of credit was called. The CCC still held the warehouseman's receipt.

Appellants are owners of other stored rice in the same grain warehouse and will share in the proceeds of the letter of credit. Unfortunately, the $75,000.00 from the letter of credit is not sufficient to pay all of the claims in full. If appellants can prevent appellee CCC from sharing in the proceeds of the letter of credit, their pro-rata recovery will be much greater.

Appellants make two assignments of error. In one they argue that the trial court "erred in holding that the CCC was one of a class of protected depositors of grain due to the purpose of and an ambiguity and difference in wording between Act 83 of 1979 and Act 401 of 1981." The argument is without merit.

The storing of the rice in the warehouse is governed by Act 83 of 1979, the Arkansas Public Grain Warehouse Law, Ark. Code Ann. §§ 2-17-201 to -238 (1987). In this case, a letter of credit was posted in lieu of a bond as required by Ark. Code Ann. § 2-17-209(b) (1987). Ark. Code Ann. § 2-17-209(a)(1)(A)(ii) provides:

> The bond shall run to the State of Arkansas and be for the benefit of *all depositors or storers of grain*, their legal

representatives, attorneys, or assigns.

Clearly, CCC was a member of the class of protected depositors as a storer of grain and is entitled to share in the proceeds of the bond.

Act 401 of 1981, which is codified as Ark. Code Ann. §§ 2-17-301 to -304 (1987), provides special protection to growers and producers of grain. *See* Note, *Act 401 of the Public Grain Warehouse Law: An Exception to the U.C.C. Concept of Voidable Title*, 37 Ark. L. Rev. 293 (1983). It provides that a grower or producer will not lose title to his grain by delivering it to a public grain warehouseman, and that a sale of grain by a public grain warehouseman is void unless the sale is supported by a written document executed by the owner which specifically conveys title to the grain to the warehouseman. Appellants point out that the appellee CCC is not a grower or a producer and thus, not covered by this Act. It does not matter that CCC is not entitled to this special protection under Act 401 of 1981. CCC is protected by Act 83 of 1979, and the 1979 Act does not conflict with, and was not repealed by, the 1981 Act.

Appellant's other assignment of error is that the trial "court erred in finding that the CCC was a protected depositor of grain . . . where . . . the CCC had entered into a contract of sale of its grain with the warehouseman." Again, the trial court ruled correctly.

A part of the Arkansas Public Grain Warehouse Law, Ark. Code Ann. § 2-17-203 provides:

2-17-203. *Applicability.*

(a) . . .

(b) The provisions and definitions of the Uniform Commercial Code, . . . , relating to warehouse receipts, to the extent not inconsistent with this subchapter, shall govern warehouse receipts issued by public grain warehousemen, and the other provisions of the Uniform Commercial Code shall also be applicable to the provisions of this subchapter to the extent not inconsistent with this subchapter.

This subsection clearly provides that provisions of the Uniform Commercial Code are applicable so long as they are not

inconsistent with the Arkansas Public Grain Warehouse Law. Ark. Code Ann. § 4-2-401, a part of the UCC, is not inconsistent. In pertinent part, it provides:

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods:

(a) If the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents;

A warehouse receipt is a document of title. Ark. Code Ann. § 4-1-201(15).

In summary, the agreement in this case called for payment in full before surrender of the warehouse receipt. The documents of title were not to be, and never were, delivered. Thus, title did not pass from the CCC to the warehouseman. The rice was "stored grain" as defined by Ark. Code Ann. § 2-17-202(4), and "[t]he bond shall . . . be for the benefit of *all* depositors or storers of grain. . . ." Ark. Code Ann. § 2-17-209(a)(1)(A)(ii). Accordingly, the trial court correctly ruled that the appellee, CCC, was a protected depositor of grain, and that it was entitled to share in the proceeds of the letter of credit.

Affirmed.